**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**GREENVILLE DIVISION**

**STELLA (GATEWOOD) WILLIAMS** **PLAINTIFF**

**V.** **NO. 4:22-CV-87-DMB-JMV**

**DELTA BUS LINES, INC.** **DEFENDANT**

**OPINION AND ORDER**

Stella Williams sued Delta Bus Lines, Inc., her former employer, claiming disability discrimination, failure to accommodate her disability, failure to engage in the interactive process, quid pro quo sexual harassment, and hostile workplace sexual harassment. Delta Bus Lines moves for summary judgment on all claims. Because Williams failed to show pretext for her disability discrimination claim, because Williams' sexual harassment claims are time-barred, and because genuine issues of material fact exist as to her remaining properly pled claims, summary judgment will be granted in part and denied in part.

**I**
**Procedural History**

On June 9, 2022, Stella Gatewood filed a complaint in the United States District Court for the Northern District of Mississippi against Delta Bus Lines, Inc., alleging various employment-related claims of disability discrimination and sexual harassment. Doc. #1. Delta Bus Lines answered the complaint on August 8, 2022. Doc. #6. On November 9, 2022, Gatewood moved to amend her complaint to change her last name to Williams due to her ongoing divorce. Doc. #18. United States Magistrate Judge Jane M. Virden granted the amendment request on November 14, 2022. Doc. #19. Two days later, "Stella (Gatewood) Williams" filed an amended complaint which asserts the same claims as the original complaint. Doc. #20. Delta Bus Lines answered the

amended complaint on December 8, 2022, asserting numerous affirmative defenses, including "statute of limitations" and "release and laches." Doc. #21 at 1.

On July 24, 2023, Delta Bus Lines filed a motion for summary judgment on all Williams' claims in the amended complaint.[1] Doc. #60. Williams responded on August 7, 2023, Doc. #62, and Delta Bus Lines replied on August 14, 2023, Doc. #65.[2] On October 11, 2023, Delta Bus Lines, with leave of the Court, filed an amended reply memorandum. Docs. #110, #111. The Court heard oral argument on the summary judgment motion on November 9, 2023.[3] Doc. #118.

## II
## Standard

A court shall enter summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is *material* if it *might affect* the outcome of the suit under governing law. An issue is *genuine* if it is real and substantial, as opposed to merely formal, pretended, or a sham." *Johnson ex rel. A.N.E.R. v. City of San Antonio*, No. 23-50196, 2023 WL 3019686, at *6 n.7 (5th Cir. Apr. 20, 2023) (cleaned up) (emphasis in original). "All reasonable inferences must be viewed in the light most favorable to the party opposing summary judgment, and any doubt must be resolved in that party's favor." *Jones v. Gulf Coast Rest. Grp., Inc.*, 8 F.4th 363, 368 (5th Cir. 2021) (citation and internal quotations marks omitted).

When "a defendant properly moves for summary judgment, the non-movant plaintiff must

---

[1] Delta Bus Lines initially moved for summary judgment on June 9, 2023, Doc. #52, but the Court denied that motion without prejudice due to Local Rules violations and advised Delta Bus Lines it may refile the summary judgment motion within fourteen days. Doc. #59 at 2–3.

[2] The same day, Delta Bus Lines also moved to exceed the page limitation regarding her summary judgment briefs, which the Court granted on August 21, 2023. Doc. #67.

[3] At oral argument, the parties raised certain matters not substantiated by the summary judgment evidence. The Court will decide the summary judgment motions based only on the evidence present in the summary judgment record.

bring forward sufficient evidence to demonstrate that a genuine issue of material fact exists on every element of a claim." *Smith v. Harris Cnty.*, 956 F.3d 311, 319 n.3 (5th Cir. 2020) (citation omitted). "[I]f the court determines that a reasonable juror could not find in the plaintiff's favor on any one of [the] elements [of a claim], a grant of summary judgment for the defendant is appropriate." *Funches v. Progressive Tractor & Implement Co.*, 905 F.3d 846, 851 (5th Cir. 2018). And "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact … the court may … grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3).

## III
## <u>Factual Background</u>

On February 12, 2019, Delta Bus Lines hired Stella Williams as a commercial bus driver. Doc. #60-3 at 45, 47. Williams was responsible for transporting passengers, checking bus fluids, keeping the inside of the bus clean, taking passengers' tickets, and assisting passengers. Doc. #60-9 at 5. Williams says she was originally told she would work "four days on, four days off" but in practice she was never given four days off except for the time she took a personal vacation. Doc. #60-3 at 57. According to Joseph Howard, the owner of Delta Bus Lines, the bus drivers "pull line service … four days, but … understand that when they was [sic] hired [they have] two extra board days that [they] have to work." Doc. #60-1 at 4, 19.

According to Williams, her immediate supervisor John Bradford began sexually harassing her around Valentine's Day 2020; after she married on May 18, 2021, Bradford required her to work more hours following her rejection of his sexual advances (though Williams admits she "wasn't working more hours than anyone else," Doc. #60-3 at 190); and Bradford stopped sexually harassing her around November 2020 and instead began behaving meanly towards her. *Id.* at 109–

10, 159, 190.

On April 26, 2021, Williams saw certified nurse practitioner Yvonne Tanner at Itta Bena Rural Health Clinic ("IBRHC"),[4] complaining of swelling and pain in her lower extremities. Doc. #60-14 at PageID 1482, 1485; Doc. #60-15 at 7, 10; *see* Doc. #60-3 at 1151–53. Tanner did not prescribe Williams any medications during that visit but instead wrote a work excuse recommending Williams return to work in seven days. Doc. #60-15 at 11–12; Doc. #60-16.

On June 21, 2021, Williams returned to IBRHC with continued complaints of bilateral ankle pain and swelling. Doc. #60-14 at PageID 1478. During this second visit, Tanner gave Williams a new medical excuse, the relevant portion of which states:

> To Whom It May Concern,
>
> Ms. Stella Williams has [a] medical problem that is exacerbate[d] by working extra shift[s]. She has been advised to work only her 4 day shift for the next 3 months. This excuse will be reevalate[d] in 3months [sic]. Please give her due consideration in this matter.

Doc. #60-6 at PageID 1394. After Williams presented the work excuse to Delta Bus Lines, it issued this response on June 23, 2021:

> John Bradford received a doctor's excuse for Stella Williams stating she can only work her 4-day work shift for the next 3 months. The excuse will be reevaluated in 3 months. The doctor's excuse has been reviewed by management: Joseph Howard, Owner, and John Bradford, Superintendent and has been determined effective immediately, Stella Williams will be put Out of Service for the length of her doctor's excuse and upon reevaluation in 3 months due to not being able to perform her job duties. When Stella Williams goes back to the doctor for revaluation of her medical condition, if she is released to return to work, full duty status, she will be put on any available run that's open.

Doc. #60-7 at PageID 1395. That same day, Delta Bus Lines issued a second response, the relevant portion of which states:

---

[4] According to Tanner, "Itta Bena Rural Health Clinic … is owned by Greenwood Leflore Hospital." Doc. #60-15 at 7.

> When Stella Williams was hired at Delta Bus Lines February 12, 2019, for a Full Time Position as a Driver, Mr. John Bradford-Superintendent discussed all the job duties that are required to be done on a consistent basis. Mr. John Bradford received a doctor's excuse form [sic] Stella Williams stating she can only work her 4-day work shift for the next 3 months. The excuse will be reevaluated in 3 months. The doctor's excuse has been reviewed by management: Joseph Howard, Owner, and John Bradford, Superintendent and has been determined effective immediately, Stella Williams will be put Out of Service for the length of her doctor's excuse and upon reevaluation in 3 months due to not being able to perform the required job duties to be a Full Time Driver at Delta Bus Lines. When Stella Williams goes back to the doctor for reevaluation of her medical condition, if she is released to return to work, physically fit to Full Time duty status and able to perform all required Full Time job duties as a Driver, she will be put on any available run that's open.

*Id.* at PageID 1396. Williams also says she reported Bradford's behavior to Howard in June of 2021 and was put on leave the next day. Doc. #60-3 at 146. Howard denies Williams ever discussed Bradford's alleged behavior with him. Doc. #60-1 at 6–7. Delta Bus Lines paid Williams' health insurance premiums after placing her on leave until it became clear she was not returning to work after five months. Doc. #60-1 at 15–16.

In July of 2021, approximately one month after being placed on leave, Williams accepted a job with the Bolivar County Council on Aging ("BCCA") as a local driver. Doc. #60-3 at 49–50. At BCCA, she was responsible for transporting patients to their doctors' appointments and worked approximately thirty (30) hours a week. *Id.* at 50. Despite working reduced hours at BCCA, she continued to suffer from swelling in her lower extremities. *Id.* at 83. Williams ended her employment with BCCA in May 2022 after she had "gotten a clear from [her] doctor," and began working as a driver for Covenant Transportation. *Id.* at 51–52, 68. In July of 2022, Williams voluntarily resigned from Covenant Transportation and began working for the City of Greenville as a garbage truck driver. *Id.* at 68–69.

On June 29, 2021, Williams, filed a "Charge of Discrimination" with the United States Equal Employment Opportunity Commission ("EEOC") alleging that (1) her former employer

Delta Bus Lines discriminated against her based on sex and disability, (2) she was sexually harassed by her former supervisor while working for Delta Bus Lines, and (3) she was "retaliated against for reporting sex harassment." Doc. #1-1 at PageID 7. On March 17, 2022, the EEOC issued Williams a "Notice of Right to Sue" stating that her claims must be filed within ninety (90) days of her receipt of the notice. Doc. #1-2 at PageID 8.

## IV
## Analysis

The parties do not dispute that Williams' amended complaint alleges:

> Defendant is liable for discrimination against Plaintiff because of her disability, including failing to engage in the interactive process, and in refusing to accommodate her disability.
>
> Defendant is liable to Plaintiff for quid pro quo sexual harassment and hostile work environment sexual harassment.

Doc. #20 at 4 (paragraph numbering omitted). Delta Bus Lines argues summary judgment is warranted because the undisputed facts show (1) Williams is not a qualified individual under the ADA because she could not meet the Department of Transportation ("DOT") safety standards; (2) it reasonably accommodated Williams; and (3) Williams' Title VII claims are time-barred.[5] Doc. #60 at PageID 989–90; *see* Doc. #61 at PageID 1612. In its memorandum in support of summary judgment, Delta Bus Lines also argues that Williams failed to plead a retaliation claim in her amended complaint so any retaliation claim asserted by Williams is barred. Doc. #61 at PageID 1618.

Williams responds that (1) her Title VII claims are not time-barred; (2) Delta Bus Lines

---

[5] Delta Bus Lines further argues that Williams' Title VII claims are barred by the doctrine of latches and the *Ellerth/Faragher* defense. Doc. #60 at PageID 989. Because these arguments were not raised in Delta Bus Lines' original memorandum, which the Court struck, the Court declines to consider them. *See generally* Doc. #59 at 2–3 ("If refiled, the summary judgment motion and supporting memorandum briefs may not include any new basis for summary judgment or new legal argument.").

waived its time-barred defense to her Title VII claims by not raising the argument as an affirmative defense; (3) there are genuine issues of material fact whether Delta Bus Lines violated her rights under the ADA; (4) and there are genuine issues of material fact whether Delta Bus Lines failed to engage in the interactive process. Doc. #62 at 1; Doc. #63 at 8. In her response brief, Williams adds that her EEOC charge included a retaliation claim and is fully incorporated into the amended complaint. Doc. #63 at 6. Delta Bus Lines replies that Williams' Title VII claims are barred, and her ADA claims fail as a matter of law. Doc. #111 at 1, 6.

**A. Disability Discrimination**

The Americans with Disabilities Act ("ADA") prohibits an employer from discriminating "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Congress enacted amendments to the ADA in 2008, which became effective January 1, 2009. ADA Amendments Act ("ADAAA") of 2008, Pub. L. No. 110-325, § 8, 122 Stat. 3553, 3559 (2008). "The amendments broadened the definition of what constitutes a disability and rejected the strict standards the Supreme Court set forth in *Toyota [Motor Manufacturing, Kentucky, Inc. v. Williams*, 534 U.S. 184 (2002)]." *Nyrop v. Indep. Sch. Dist. No. 11*, 616 F.3d 728, 734 n.4 (8th Cir. 2010) (citing 122 Stat. at 3554).

To prove discrimination under the ADA, an employee either may present direct evidence that she was discriminated against because of a disability or circumstantial evidence under the *McDonnell Douglas* burden-shifting framework. *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014). The *McDonnell Douglas* framework requires the plaintiff to first establish a prima facie case. *Jones*, 8 F.4th at 368. If the plaintiff can do so, "the burden then shifts to the defendant

to articulate a legitimate reason for the adverse employment action. If the employer provides such a reason, the burden then shifts back to the plaintiff to show that the reason is a pretext." *Id.* "A plaintiff may show pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence." *Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 378–79 (5th Cir. 2010) (citation and internal quotation marks omitted).

Because there is no direct evidence Williams was discriminated against due to a disability,[6] she first must establish a prima facie case of discrimination. To establish a prima facie case under the ADA, Williams must show "(1) [she] has a disability … ; (2) [she] was qualified for the job; and (3) [she] was subject to an adverse employment decision because of [her] disability." *Nall v. BNSF Ry. Co.*, 917 F.3d 335, 341 (5th Cir. 2019).

**1. Prima facie case**

Delta Bus Lines does not contest that Williams had a disability[7] at the time of her employment or that she suffered an adverse employment decision.[8] Rather, Delta Bus Lines argues Williams was not a qualified individual within the meaning of the ADA because she did not meet the United States Department of Transportation ("DOT") regulatory requirements for commercial drivers due to bilateral swelling in her feet and ankles.[9] Doc. #61 at PageID 1601, 1609.[10]

[6] The Fifth Circuit defines "direct evidence" as "evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002).

[7] Williams submits that the bilateral swelling in her feet and ankles constitutes a disability within the meaning of the ADA. Doc. #63 at 17 n.4. The Court presumes but does not decide that Williams' bilateral swelling constitutes a disability within the broadened meaning of disability under the ADAAA. *See Nyrop,* 616 F.3d at 734 n.4.

[8] *See generally* Docs. #60, #61, #111.

[9] To support this argument, Delta Bus Lines submits, without any citation to the record, that both Williams and her nurse practitioner acknowledge that Williams' bilateral swelling made it difficult for her to operate the bus safely and perform her essential job duties. Doc. #61 at PageID 1601.

[10] Delta Bus Lines further claims that Williams was "'having a hard time on the road' due to her back problems and migraines." Doc. #61 at 1610 (citing Doc. #60-2 at 11–12). It also submits that Williams was not qualified because she "had her husband accompany her to work so that he could 'rub [her] legs and … feet' and 'help[] [her] to get trash off and … clean the bus.'" *Id.* (citing Doc. #60-3 at 262–63). Delta Bus Lines interprets this fact to mean that Williams admitted she could not independently perform these tasks. *See id.* at PageID 1611. Williams admitted that she would

Williams maintains she is qualified because (1) she "has worked in a variety of commercial driving jobs, and in every case, has been medically certified" and "every one of the many different companies for whom she had worked had always given her medical certification;" (2) "[a]s soon as [Delta Bus Lines] forced [her] out of the present job by giving her a mandatory ninety (90) day layoff without pay, she obtained other employment [as a commercial driver] and has had other employment continuously ever since;" and (3) she has always held a Class A commercial driver's license. Doc. #63 at 15.[11]

"A 'qualified individual' is 'an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires.'" *Shirley v. Precision Castparts Corp.*, 726 F.3d 675, 678 (5th Cir. 2013) (quoting 42 U.S.C. § 12111(8)). "Essential functions" are "the fundamental job duties of the employment position" and "do[] not include the marginal functions of the position." 29 C.F.R. § 1630.2(n)(1).[12]

The Fifth Circuit has adopted a two-part test to determine if an employee is qualified. *Gober v. Frankel Family Tr.*, 537 F. App'x 518, 521 (5th Cir. 2013). To avoid summary judgment on the qualified factor, a plaintiff must show that she could "(1) perform the essential functions of the job in spite of [her] disability, or (2) that a reasonable accommodation of

---

sometimes have her husband ride with her and that her husband would help her. Doc. #60-3 at 262–63. But she did not say that she could not perform the job duties on her own. Drivers were allowed to have passengers accompany them during their shifts if they received approval from Delta Bus Lines. Doc. #62-4 at 21–22. Williams claims that at the last meeting she had with Bradford, he said there would be a "problem" with her husband riding as a passenger on her bus, even if she paid for the ticket. Doc. #60-3 at 262.

[11] In its reply memorandum, Delta Bus Lines argues for the first time that Williams was required to have a new DOT examination and get re-certified due to her foot swelling. Doc. #111 at 7. "Reply briefs cannot be used to raise new arguments." *Hollis v. Lynch*, 827 F.3d 436, 451 (5th Cir. 2016). Accordingly, the Court will not consider this argument.

[12] In other words, essential functions are those "basic" to the job. *See Myers v. Hose*, 50 F.3d 278, 282 (4th Cir. 1995) (essential function of a "bus driver is to operate his motor vehicle in a timely, responsible fashion").

[her] disability would have enabled [her] to perform the essential functions of [her] job." *Cannon v. Jacobs Field Servs. N. Am., Inc.*, 813 F.3d 586, 592 (5th Cir. 2016) (cleaned up). With respect to evaluating whether an employee is qualified, in *Albertson's Inc. v. Kirkingburg*, the United States Supreme Court remarked:

> When Congress enacted the ADA, it recognized that federal safety rules would limit application of the ADA as a matter of law. The Senate Labor and Human Resources Committee Report on the ADA stated that "a person with a disability applying for or currently holding a job subject to [DOT standards for drivers] must be able to satisfy these physical qualification standards in order to be considered a qualified individual with a disability under title I of this legislation." S. Rep. No. 101-116, pp. 27-28 (1998).

527 U.S. 555, 573–74 (1999). Because the employer in *Albertson's* could rely on the DOT regulation in defining the essential job functions of a commercial truck driver, the discharge of a truck driver who did not meet DOT's distant vision acuity standard did not give rise to an ADA violation as he was not a qualified individual with a disability under the statute. *Id.* at 561, 577–78.

Here, DOT regulations govern whether Williams is a qualified individual under the ADA. *Id.* at 573–74. The relevant DOT regulation for commercial drivers states that "[a] person … must not operate a commercial motor vehicle unless … she is medically certified as physically qualified to do so, and, … has … the original, or a copy, of a current medical examiner's certificate that … she is physically qualified to drive a commercial motor vehicle." 49 C.F.R. § 391.41(a)(1) (2007). A "physically qualified" person can have no "impairment of … [a]n arm, foot, or leg which interferes with the ability to perform normal tasks associated with operating a commercial motor vehicle." *Id.* at § 391.41(b)(2)(ii).

Williams submits that she has always held a commercial driver's license, was approved by

her nurse to continue commercial driving for forty-hours a week,[13] was immediately able to find another commercial driving job after being placed on leave,[14] and has never been denied a DOT medical certification. Doc. #63 at 14, 15; Doc. #60-3 at 105, 266–67. Since a medical professional found Williams able to drive "a normal routine of four days on and four days off"[15] and viewing the evidence in the light most favorable to Williams, a reasonable jury could conclude Williams met the DOT requirements for commercial driving and thus was qualified under the ADA.

**2. Legitimate, nondiscriminatory reason**

Because Williams can establish a prima facie case, the burden under *McDonnell Douglas* shifts to Delta Bus Lines to demonstrate a legitimate, nonretaliatory reason for the adverse employment action. *Jones*, 8 F.4th at 368. Delta Bus Lines submits that even if Williams can make a prima facie case for disability discrimination, its safety concerns were legitimate non-discriminatory reasons for Williams' adverse employment outcome. Doc. #61 at PageID 1613–14. Safety concerns have been recognized as a legitimate, nondiscriminatory reason for an adverse employment action. *Nall*, 917 F.3d at 348 (differentiating between safety concerns, which may be a legitimate, nondiscriminatory reason, and concerns about a physical impairment, which is not a legitimate, nondiscriminatory reason); *Martin v. Bayland Inc.*, 181 F. App'x 422, 424 (5th Cir. 2006) ("The district court did not err in considering safety as one of Bayland's legitimate, nondiscriminatory reasons."). Accordingly, Delta Bus Lines has satisfied its burden by showing it

[13] Employers may rely on physician's representations to determine whether employee is qualified individual with disability. *Weigel v. Target Stores*, 122 F.3d 461, 467 (7th Cir. 1997). By contrast, in the case that Delta Bus Lines relies upon to argue Williams was not qualified, the commercial driver was only approved by his physician to drive for zero to two minutes. *See* Doc. #61 at PageID 1611–12; *Mink v. Wal-Mart Stores, Inc.*, 185 F. Supp. 2d 659, 661 (N.D. Miss 2002).

[14] Williams does not say whether her new employer knew about her bilateral foot swelling. *See generally* Doc. #63.

[15] Doc. #60-15 at 14–15; Doc. #60-6. Nurse Tanner's professional opinion is the only medical opinion of Williams' condition and ability to drive at the time she was placed on leave. Howard did not require Williams to undergo a DOT medical evaluation with a doctor. Doc. #60-1 at 8.

had legitimate safety concerns.

### 3. Pretext

Because Delta Bus Lines offered a legitimate, nondiscriminatory reason for placing Williams on leave, Williams must present substantial evidence that Delta Bus Lines' reason for her forced leave is pretextual. *Delaval v. PTech Drilling Tubulars, LLC*, 824 F.3d 476, 479–80 (5th Cir. 2016). "A plaintiff may meet this burden by presenting evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence." *Gosby v. Apache Indus. Servs.*, 30 F.4th 523, 527 (5th Cir. 2022) (citations and internal quotation marks omitted). "At summary judgment, evidence demonstrating that the employer's explanation is false or unworthy of credence, taken together with the plaintiff's prima facie case, is likely to support an inference of discrimination even without further evidence of [the] defendant's true motive." *LHC Grp., Inc.*, 773 F.3d at 702 (cleaned up).

Williams does not argue that Delta Bus Lines' safety concerns were a pretext for disability discrimination.[16] *See generally* Docs. #62, #63. Therefore, Williams has not met her burden under the *McDonnell Douglas* framework. Summary judgment is properly granted on the disability discrimination claim. *Garcia v. Penske Logistics, LLC*, 631 F. App'x 204, 211 (5th Cir. 2015) (quoting *Read v. BT Alex Brown, Inc.*, 72 F. App'x 112, 115 (5th Cir. 2003) ("Where the plaintiff fails to produce substantial evidence of pretext, or produces evidence permitting only an indisputably tenuous inference of pretext, summary judgment in favor of the defendant is

---

[16] Instead, Williams says being placed on unpaid leave was pretext for her rejection of Bradford's sexual advances. *See* Doc. #63 at 12 ("Williams' testimony is that ninety (90) days without pay was not caused by any need to accommodate her but, instead, was caused by Bradford's being upset with her because of her refusal of his sexual overtures."). However, for her disability discrimination claim, Williams must show pretext related to her disability. *See Pinkerton v. Spellings*, 529 F.3d 513, 519 (5th Cir. 2008) ("Under the ADA, discrimination need not be the sole reason for the adverse employment decision, but must actually play a role in the employer's decision making process and have a determinative influence on the outcome.") (cleaned up).

appropriate.”)).

**B. Accommodation**

“The ADA requires an employer to make ‘reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability.’” *Delaval*, 824 F.3d at 481 (alterations omitted) (quoting 42 U.S.C. § 12112(b)(5)(A)). To prevail on a failure-to-accommodate claim, a plaintiff must show “(1) [she] is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered employer; and (3) the employer failed to make reasonable accommodations for such known limitations.” *Feist v. La., Dep’t of Just., Office of the Att’y Gen.*, 730 F.3d 450, 452 (5th Cir. 2013) (internal quotation marks omitted).[17] Delta Bus Lines argues Williams’ claim fails because she was reasonably accommodated. Doc. #61 at PageID 1614–15. In response, Williams contends a jury could find ninety days without pay is an unreasonable accommodation. Doc. #63 at 13. Delta Bus Lines replies that unpaid leave was a reasonable accommodation. Doc. #111 at 8

“Time off, whether paid or unpaid, can be a reasonable accommodation.” *Jennings v. Watson*, 11 F.4th 335, 344 (5th Cir. 2021) (citations omitted). “Temporary unpaid leave is not rendered unreasonable simply because it involved some cost to [the employee].” *Austgen v. Allied Barton Sec. Servs.*, 815 F. App’x 772, 775 (5th Cir. 2020) (cleaned up). In *Augsten*, the Fifth Circuit decided that “[p]lacing [the plaintiff] on temporary leave of *only a few weeks* while awaiting his doctor’s recommendations on his ability to work was a reasonable accommodation.” *Id.* (emphasis added) (citing *Moss v. Harris Cnty. Constable Precinct One*, 851 F.3d 413, 418 (5th Cir. 2017)). However, a genuine issue of material fact exists as to whether ninety days of unpaid

[17] The Court declines to analyze the first and second elements because it already determined a reasonable jury might conclude Williams was qualified and because Delta Bus Lines does not challenge the second element of the failure to accommodate claim. *See generally* Docs. #60, #61.

leave was a reasonable accommodation under the circumstances—especially since Williams' nurse recommended she still work full shifts, four days in a row. Docs. #60-6, #60-15 at 12; *see Dickerson v. U.S. Dep't of Veterans Affairs*, No. H-21-3805, 2022 WL 2067925, at *6 (S.D. Tex. June 8, 2022) (defendant "failed to make reasonable accommodations" when it placed the plaintiff on unpaid leave "because it allowed [the plaintiff] to work only 'without restrictions' and made no effort to see if he could work with a temporary restriction."). So summary judgment is denied as to Williams' failure to accommodate claim.

**C. Interactive Process**[18]

Delta Bus Lines argues that it engaged in the interactive process by giving Williams unpaid leave and that Williams never communicated an objection to being placed on unpaid leave as an accommodation. Doc. #61 at PageID 1617. Williams claims that her former employer and supervisor told her "no physician was going to tell them how to run the company." Doc. #63 at 18. In its reply brief, Delta Bus Lines does not address the claim for failure to engage in the interactive process. *See generally* Docs. #65, #111.

In the Fifth Circuit, failure to engage in the interactive process is only actionable if the plaintiff can show a failure to accommodate. *See Silva v. City of Hidalgo*, 575 F. App'x 419, 424 n.3 (5th Cir. 2014) (interactive process claim failed where plaintiff introduced no "evidence that there was an existing vacant desk duty or light duty position, or that ... [the] assessment that no such position was available was flawed"). "[O]nce an employee has made a request for an accommodation, it may be necessary for the employer to initiate an informal, interactive process

[18] Several circuits have found that failure to engage in the interactive process is not an independent claim. *See Sheng v. M&TBank Corp.*, 848 F.3d 78, 87 (2d Cir. 2017) ("a failure to engage in a good faith interactive process is not an independent violation of the ADA"); *Thompson v. Fresh Prods., LLC*, 985 F.3d 509, 525 (6th Cir. 2021) ("In this circuit, failure to engage in the interactive process does not give rise to an independent claim."); *Murphy v. Sec'y, U.S. Dep't of Army*, 769 F. App'x 779, 782 (11th Cir. 2019) ("There is no independent cause of action for bad faith interactive process.").

with the qualified individual with a disability … in order to craft a reasonable accommodation."[19] *Molden v. E. Baton Rouge Par. Sch. Bd.*, 715 F. App'x 310, 315–16 (5th Cir. 2017) (quotation marks omitted). "To prevail on the claim of failure to engage in the interactive process, the employee must show that the employer's unwillingness to engage in the process led to a failure to reasonably accommodate the employee." *Jackson v. Blue Mt. Prod. Co.*, 761 F. App'x 356, 362 (5th Cir. 2019). Failure to participate in an interactive process does not alone constitute a violation of the ADA. *See Picard v. St. Tammany Par. Hosp.*, 423 F. App'x 467, 470 (5th Cir. 2011) (per curiam) (rejecting argument that failure to engage in interactive process constitutes a per se violation of the ADA). "When the breakdown is 'traceable to the employee,' there is no violation." *Jackson*, 761 F. App'x at 362 (citations omitted).

According to Williams, Delta Bus Line refused to consider her nurse's recommendation—or any other medical practitioner's recommendation—and immediately placed her on ninety days days of unpaid leave after she requested an accommodation. Doc. #60-3 at 87. In response to Williams' EEOC charge, Howard wrote the EEOC that "[w]e can't allow employees to set there [sic] own schedule when the demand get like that I believe you need to start your own Company." Doc. #62-9. Given Howard's response, a reasonable jury might find Delta Bus Lines was unwilling to engage in a good faith interactive process. *See Molden*, 715 F. App'x at 316 (an employer violates the ADA when its "unwillingness … *leads to* a failure to reasonably accommodate an employee") (cleaned up) (emphasis in original); *see also Cutrera v. Bd. of Supervisors*, 429 F.3d 108, 113 (5th Cir. 2005) ("An employer may not stymie the interactive process of identifying a reasonable accommodation for an employee's disability by preemptively

[19] *But see Delaval*, 824 F.3d at 481 ("Once an accommodation is requested, an employer *must* engage in the interactive process, or a flexible dialogue, with the employee with the goal of finding an appropriate accommodation for the limitation.") (citation and internal quotations marks omitted) (emphasis added).

terminating the employee before an accommodation can be considered or recommended."); *Loulseged v. Akzo Nobel Inc.*, 178 F.3d 731, 737–39 (5th Cir. 1999) (each party must engage in the interactive process); *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 315, 317–18 (3d Cir. 1999) (employer has duty to seek specific information to enable it to make accommodations). Accordingly, Delta Bus Lines' request for summary judgment is denied as to Williams' claim for failure to engage in the interactive process.

**D. Retaliation**

Delta Bus Lines argues retaliation was not pled as a claim in Williams' complaint and to the extent Williams intends to assert a retaliation claim, such should be barred. Doc. #61 at PageID 1618 n.1. Williams responds that she alleged a retaliation claim in her EEOC letter, which she contends is part of the amended complaint because it is attached to the amended complaint.[20] Doc. #63 at 6–7;[21] *see* Doc. #20 at 4; Doc. #20-1.[22]

Federal Rule of Civil Procedure 10(c) provides: "A statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion. A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Applying Rule 10(c) in the employment discrimination context, the Fifth Circuit has held that where a plaintiff attaches and fully incorporates an EEOC charge into his complaint, it becomes part of his complaint for all purposes. *Davoodi v. Austin Indep. Sch. Dist.*, 755 F.3d 307, 310 (5th

---

[20] During oral argument, Williams argued *Johnson v. City of Shelby*, 574 U.S. 10 (2014), supports her position. However, *Johnson* dealt with failure to invoke § 1983, not a retaliation claim.

[21] Williams also argues that Delta Bus Lines "is not prejudiced by this Court's considering the retaliation claim since [Delta Bus Lines] told [her] counsel about this claim at [her] deposition." Doc. #63 at 7. Williams cites no authority that a party's mere mention of a topic at a deposition is sufficient to support the assertion of a claim—particularly, based on the deposition testimony she cites (which does not mention the word retaliation). And at no point after her February 2023 deposition did Williams seek leave to amend her complaint to clarify her intention to assert a claim of retaliation based on her disability.

[22] In its reply, Delta Bus Lines also addresses the retaliation claim on the merits. Doc. #111 at 3–5.

Cir. 2014); *see Rayner v. Stringer Water Works Ass'n*, No. 2:20-cv-187, 2021 WL 864870, at *1 (S.D. Miss. 2021) ("Under Fifth Circuit precedent, an attached and fully incorporated EEOC charge is part of the complaint for all purposes, including jurisdictional determinations."). "Although there is no prescribed procedure for referring to incorporated matter, the references to prior allegations must be direct and explicit to enable the responding party to ascertain the nature and extent of the incorporation." 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1326 (4th ed. 2023). "[S]uch incorporation must be done with a degree of specificity and clarity which would enable the responding party to easily determine the nature and extent of the incorporation." *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1176 (5th Cir. 2006) (citation and internal quotation marks omitted); *accord Sec. First Bank v. Burlington N.*, 213 F. Supp. 2d 1087, 1093 (D. Neb. 2002).

Williams' amended complaint uses the word "retaliatory" once and then only to describe why Bradford allegedly made Williams work excessive hours—supposedly because, as told to Williams by coworkers, Bradford was angry she got married.[23] Doc. #20 at 2. And while the amended complaint identifies and attaches Williams' EEOC charge, it fails to incorporate it by reference. *Id.* at 4. For these reasons, the Court declines to recognize Williams' EEOC charge as part of her amended complaint and Williams' reliance on the EEOC charge to show the assertion of a retaliation claim fails.[24] *See Davoodi*, 755 F.3d at 310;[25] *Loomis v. Starkville Miss. Pub. Sch.*

[23] "As a retaliatory measure, Bradford began to work Plaintiff for excessive hours, instead of her normal four (4) day work shift." Doc. #20 at 2.

[24] The amended complaint itself fails to properly assert a retaliation claim even under the more liberal standard of notice pleading. *See Anderson v. U.S. HUD*, 554 F.3d 525, 528 (5th Cir. 2008) ("Although this notice does not require pleading specific facts, the complaint must give the defendant fair notice of what the claim is and the grounds upon which it rests.") (cleaned up).

[25] *See also Garrett v. S. Newspapers, Inc.*, No. H-18-2578, 2018 WL 4352914, at *2 (S.D. Tex. Sept. 12, 2018) ("Garrett references the [attached] EEOC charge only to show that she met the administrative exhaustion requirements for filing suit. The EEOC charge, therefore, is not fully incorporated into Garrett's amended complaint.") (cleaned up); *Johnson v. Unilever Home & Personal Care, USA*, No. 4:02-cv-627, 2003 WL 21911075, at *3 (E.D. Mo. July

*Dist.*, 150 F. Supp. 3d 730, 745 (N.D. Miss. 2015) ("Of course, because the content of the EEOC charge only sets forth the maximum scope of a Title VII complaint, a plaintiff can waive or abandon properly charged claims of discrimination by failing to plead such claims in her complaint.").[26]

**E. Sexual Harassment**

Under Title VII, it is "an unlawful employment practice for an employer … to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's … sex." 42 U.S.C. § 2000e-2(a)(1). "Sexual harassment is a form of sex discrimination under Title VII." *Dowdell v. Culpepper & Assocs. Sec. Servs., Inc.*, No. 19-11410, 2020 WL 5095274, at *5 (E.D. La. Aug. 28, 2020).[27] "The Supreme Court recognizes two types of Title VII sexual harassment claims: (1) claims based on requests for sexual favors that result in adverse employment actions ('quid pro quo claims'); and (2) claims in which bothersome attention or sexual remarks create a hostile work environment." *Id.* (citing *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998); *Burlington Indus. v. Ellerth*, 524 U.S. 742 (1998)). Williams alleges both types in her amended complaint, and Delta Bus Lines seeks

30, 2003) ("Johnson also alleged that Unilever retaliated against him in his EEOC charge, but the Court finds no reference to a retaliation cause of action in his complaint."); *Kitchens v. Pull-A-Parts of Jackson, LLC*, No. 3:15-cv-305, 2015 WL 5772482, at *2 (S.D. Miss. Sept. 30, 2015) (granting dismissal for failure to state a claim, opining that "[t]his complaint purports to incorporate the EEOC charge, but it never specifies which statements are relied upon for pleading purposes. Though the facts are not complex, and it is hard to say PAP lacks notice, it does seem that Rule 10(b) becomes punchless if a party incorporates all of the relevant facts under Rule 10(c) without further explanation.").

[26] Even if the Court considered the EEOC charge a part of Williams' amended complaint, the EEOC charge appears to contain a sexual harassment retaliation claim—not a *disability related* retaliation claim. *See* Doc. #20-1. Williams' amended complaint already contains both a quid pro quo sexual harassment claim and a hostile work environment sexual harassment claim. Doc. #20 at 4.

[27] Delta Bus Lines sometimes refers to Williams' sexual harassment claims as sexual discrimination claims. *See, e.g.*, Doc. #61 at 1619; *see also Gaudet v. City of Kenner*, No. 12-86, 2012 WL 1995295, at *2 (E.D. La. June 4, 2012) (where defendant sought summary judgment on plaintiff's sex discrimination claim and plaintiff actually alleged sexual harassment resulting in a hostile work environment, analyzing plaintiff's claims for sex discrimination, sexual harassment, and hostile work environment jointly under appropriate case law).

summary judgment on both.

**1. Timeliness**

Delta Bus Lines asserts that Williams' Title VII claims are time-barred because she failed to file her EEOC charge within 180 days of the sexual harassment she allegedly suffered while employed with Delta Bus Lines. Doc. #61 at PageID 1618. Williams responds that (1) the claims are not time-barred because the sexual harassment stopped in November 2021 then resumed in May 2022, and (2) Delta Bus Lines waived its timeliness argument by not pleading it as an affirmative defense.[28] Doc. #63 at 7–8. Delta Bus Lines replies that it did raise an affirmative defense of "statute of limitations" in its answer to the amended complaint. Doc. #111 at 1.

*a. Rule 8(c)*

A Title VII claimant must file charges with the EEOC within 180 days after the alleged illegal conduct. 42 U.S.C. § 2000e-5(e)(1). "The 180-day limitation period is an affirmative defense." *McKenzie v. Collins*, No. 5:07-cv-68, 2008 WL 2705530, at *3 (S.D. Miss. July 9, 2008).[29] This time limit is akin to a statute of limitations—"filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982); *Espinoza v. Mo. Pac. R.R. Co.*, 754 F.2d 1247, 1248 n.1 (5th Cir. 1985).

"Under Rule 8(c), a defendant must affirmatively state an affirmative defense in its response with 'enough specificity or factual particularity to give the plaintiff 'fair notice' of the

[28] Williams also argues "it is not necessary to prove all of the harassment occurred within the one hundred eighty (180) day period before the EEOC charge was filed." Doc. #63 at 9.

[29] *Accord Wade v. Norfolk S. Corp.*, 121 F.3d 702 (4th Cir. 1997) (per curiam) (not selected for publication); *Wislocki-Goin v. Mears*, 831 F.2d 1374, 1377 (7th Cir. 1987).

defense that is being advanced.'" *Taylor v. HD & Assocs., LLC*, 45 F.4th 833, 838 (5th Cir. 2022) (quoting *Woodfield v. Bowman*, 193 F.3d 354, 362 (5th Cir. 1999)). "However, 'a technical failure to comply precisely with Rule 8(c) is not fatal. A defendant does not waive a defense if it was raised at a pragmatically sufficient time and did not prejudice the plaintiff in its ability to respond.'" *Id.* (quoting *LSREF2 Baron, LLC v. Tauch*, 751 F.3d 394, 398 (5th Cir. 2014) (internal quotations and citations omitted)). In *Taylor*, the Fifth Circuit found that the "defendants need not plead specific exemptions because plaintiffs are 'put on notice by the very nature of the suit that these exemptions would be relevant[.]'" *Id.* (citation omitted). The Fifth Circuit does "not take a formalistic approach to determine whether an affirmative defense was waived" under Rule 8(c) but rather, looks "at the overall context of the litigation and ha[s] found no waiver where no evidence of prejudice exists and [the plaintiff had] sufficient time to respond to the defense … before trial." *Pasco ex rel. Pasco v. Knoblauch*, 566 F.3d 572, 577 (5th Cir. 2009). "'[T]he prejudice inquiry considers whether the plaintiff had sufficient notice to prepare for and contest the defense, and not simply whether the defense, and evidence in support of it, were detrimental to the plaintiff (as every affirmative defense is).'" *Smith v. Travelers Cas. Ins. Co. of Am.*, 932 F.3d 302, 309 (5th Cir. 2019) (quoting *Rogers v. McDorman*, 521 F.3d 381, 387 (5th Cir. 2008)).

Delta Bus Lines raised the affirmative defense of "statute of limitations" in its answer to the amended complaint but did not specifically plead that the EEOC charges were time-barred. Doc. #21 at 1. Although its "statute of limitations" terminology is technically incorrect,[30] it is not fatal because Williams was "put on notice by the very nature of the suit" that Delta Bus Lines might bring an EEOC time-barred defense. *See Taylor*, 45 F.4th at 838. So the Court will consider

[30] Although similar, an EEOC time limit defense is not synonymous with statute of limitations. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982).

the time limit defense.

*b. Hostile work environment sexual harassment*

According to Delta Bus Lines, because Williams says the last time Bradford sexually harassed her was November 13, 2020, the latest she could file her EEOC charge was May 12, 2021, and therefore her EEOC charge is time-barred because it was filed on June 29, 2021. Doc. #60 at PageID 989; Doc. #61 at PageID 1596, 1622.[31] Williams responds that her hostile work environment claim is not time-barred because Bradford continued to sexually harass her after she married on May 18, 2021. Doc. #63 at 7–8.

As a general rule, a Title VII complainant must file a discrimination charge with the EEOC within 180 days of the occurrence of the alleged unlawful employment practice. 42 U.S.C. §2000e-5(e)(1). "A claim is time barred if it is not filed within [this] time limit[]." *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 109 (2002). However, "[e]ach discriminatory act starts a new clock for filing charges alleging that act." *Grice v. FMC Techs. Inc.*, 216 F. App'x. 401, 405 (5th Cir. 2007).

Williams cites nothing to support her claim that Bradford continued to sexually harass her after November 13, 2020.[32] *See* Doc. #63 at 7–8. Because, beyond argument, Williams presents no evidence that the sexual harassment continued after November 13, 2020, the November 13 date will determine if her claim is time-barred. *See Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d

---

[31] Williams first responds that the retaliation claim is not time-barred because she was retaliated against the day after she told Winfrey. Doc. #63 at 6. The Court declines to review the retaliation claim because it was not properly pled. *See supra* Section IV. A.

[32] Williams cites pages of her deposition transcript where she contends Bradford had meetings with her and asked her questions about her husband—however, those pages do not provide the dates such meetings occurred. Doc. #63 at 8 (citing Doc. #62-1 at 251, 261). And by Williams' own admission, the alleged sexual harassment stopped after November 13, 2020. Doc. #62-1 at 159–60. During oral argument, Williams was unable to provide dates for the alleged sexual harassment that occurred in May of 2021.

156, 164 (5th Cir. 2006) (court is under no "duty to sift through the record in search of evidence to support a party's opposition to summary judgment") (citation omitted).

A discrimination charge is considered "filed" for purposes of 42 U.S.C. § 2000e-5 on the date the EEOC *receives* the charge, not the date the charge is signed or mailed. *See Taylor v. Gen. Tel. Co. of the Sw.*, 759 F.2d 437, 441–42 (5th Cir. 1985) (quoting 29 C.F.R. § 1601.13(a)(1) ("Such charges are timely filed if *received* by the Commission within 180 days from the date of the alleged violation.") (emphasis added)). During her deposition, Williams testified that Bradford's sexual harassment stopped after November 13, 2020, and the date stamp on Williams' EEOC charge indicates it was received by the EEOC on July 20, 2021. Doc. #60-3 at 159–60; Doc. #20-1 at PageID 63. Given these dates, there were approximately 249 days between the last alleged instance of sexual harassment and the EEOC's receipt of Williams' EEOC charge. Because the EEOC did not receive Williams' EEOC charge within 180 days of the last alleged occurrence, Williams' hostile work environment claim is time-barred. *See* 42 U.S.C. §2000e-5(e); *Adams v. DaimlerChrysler Servs. NA LLC*, 252 F. App'x 681, 683 (5th Cir. 2007) (affirming district court's dismissal of claims as time-barred when claims accrued more than 180 days before the plaintiff filed her EEOC charge). Delta Bus Lines' request for summary judgment is granted as to Williams hostile work environment claim.

*c. Quid pro quo sexual harassment*

Delta Bus Lines also argues that Williams' quid pro quo sexual harassment claim is time-barred. Doc. #60 at 989; Doc. #61 at 1618. Because Williams argues nothing in her response in defense of her quid pro quo sexual harassment claim, *see generally* Doc. #63, the claim is deemed abandoned and will be dismissed. *See Terry Black's Barbecue, LLC v. State Auto. Mut. Ins. Co.*, 22 F.4th 450, 459 (5th Cir. 2022) ("A plaintiff abandons claims when it fails to address the claims

or oppose a motion challenging those claims.”).

## V
## Conclusion

Delta Bus Lines’ motion for summary judgment [60] is **GRANTED in Part and DENIED in Part**. The motion is GRANTED as to Williams’ disability discrimination claim, hostile work environment sexual harassment claim, and quid pro quo sexual harassment claim. The motion is DENIED in all other respects.[33]

**SO ORDERED**, this 12th day of February, 2024.

**/s/Debra M. Brown**
**UNITED STATES DISTRICT JUDGE**

[33] Given the Court’s ruling above that no retaliation claim was pled, there is no need to specify a ruling on the absent retaliation claim; otherwise, summary judgment on such claim would be denied as moot.